[Crim. No. 5271.    Second Dist., Div. Two.    Mar. 18, 1955.]

THE PEOPLE, Respondent, v. WINONA BROWN, Appellant.

Martha Malone Jefferson, Bernard S. Jefferson and A. P. Coviello for Appellant.

Edmund G. Brown, Attorney General, and James C. Maupin, Deputy Attorney General, for Respondent.

MOORE, P. J.—Convicted of grand theft from the person, defendant seeks a reversal on grounds of asserted errors of the trial judge. She makes no claim of innocence or of the insufficiency of the evidence to support the verdict.

The victim of the stealth and strong arm of this prowling woman was one Louis Barton. He had attended a meeting at the Hollywood Athletic Club on Sunset Boulevard near the intersection with Hudson Street in Los Angeles. About midnight, he left the club and approached his automobile on Hudson. As he inserted his key into the lock of the door, a cream-colored conveyance swerved in front of the Barton car and a woman alighted, cried out: "Hey, just a minute." She seized the genitals of her theftee with one hand and with the other withdrew about one hundred dollars from his left front pants' pocket. He pushed her to the ground, but she arose with alacrity and, nothing daunted, with a nail file in her right hand, she advanced to mow Mr. Barton down. But she was doomed to disappointment. After a five-minute struggle, he wrenched the file from her left hand, as she held his money in her right. Thereupon, she fled to her car. Momentarily dazed by such violent encounter, Mr. Barton duly pursued the female figure and as she was taking her departure, through her open window he retrieved her money bag, threw it to the street and recovered a portion of the stolen lucre. He hastily entered his own vehicle and followed Mrs. Brown until she slowed down at an intersection when he wrote her license number. He continued pursuit without avail. The police did the necessary.

The defense was an alibi. Appellant and her witnesses testified substantially that during the evening and to the instant of the crime, appellant attended a card party in the 11400 block on Towne Avenue, Los Angeles, some 15 miles from the athletic club. The implication of such testimony was that the thief could not have stolen the money from such distance. But the jury declined to draw the intended inference. They convicted the woman, and probation was denied. She now languishes in a state prison.

█ Assignment is made of the court's ruling and remarks as prejudicial under the following circumstances: On his direct examination, Mr. Barton testified that he had about $100 in his pocket before the theft and had recovered about $10 or $30. When on cross-examination, Barton was asked whether he had ever told any person or officer in the case that he had lost $40, the court intervened as follows:

"THE COURT: Just a minute. Objection sustained to the question. I don't think it is material if the witness lost $1.00 or if he lost $40.00. It is not necessary. And furthermore, Mr. Coviello, it is not necessary in drafting a legal document charging grand theft of the person to charge the amount of a certain sum. Any sum would be sufficient. It could be $1.00 or $40.00. It would be grand theft."

Nothing of a prejudicial quality is to be found in the court's remarks. The comment was purely legalistic; it was a clarification of subdivision 2 of section 487 of the Penal Code. It signified no more than saying that when one takes property of any value from the person of another, he is guilty of grand theft, the same as if he had stolen a million from a castle. His entire statement was a commentary on the law of grand theft from the person, not the expression of approval or disapproval of any fact in issue. The judge did not approach the question of guilt of the accused or of the credibility of a witness.

In *People* v. *Yokum,* 118 Cal. 437 [50 P. 686], after two medical witnesses had testified for the People, with a variance, exception was taken to the court's limitation of two witnesses in rebuttal and to the judge's remarks that the evidence was immaterial. The limitation was held to be reasonable and the remark was cured by other language of the judge showing that it was material. In *People* v. *Savage,* 66 Cal.App.2d 237 [152 P.2d 240], the language of the trial judge was criticized because he went to the rescue of the prosecutrix. Appellant argued that the judge showed he was sympathetic with the witness. It was held to have been a harmless remark of the judge in trying to be courteous. The court is justified in giving his reason for a ruling.

The authorities cited by appellant in support of her first assignment (*People* v. *Jones,* 160 Cal. 358 [117 P. 176]; *People* v. *Vollmann,* 73 Cal.App.2d 769 [167 P.2d 545]; *People* v. *Vatek,* 71 Cal.App. 453 [236 P. 163]) are classic illustrations of the need for cross-examination when it is necessary to make sure that no inconsistent statements of the witness upon a material issue remain unexplained or to lay a predicate for impeachment. But a witness cannot be impeached upon an immaterial matter. These authorities declare fundamental law about which there could be no dispute when properly applied. The refusal of the judge below to permit counsel to waste time splitting hairs on inconsequential matters such as inquiring whether the witness had

testified that he had recovered $10 or $30 is a practice to be commended. The issue was: Did the accused waylay Barton, hold his body and steal property of *any* value from his person. Counting the dollars lost in the sand was calculated to divert the jury's attention from the issue.

■ The second assignment is of prejudicial misconduct in that the judge's statement, above quoted, indicated to the jury that Mr. Barton was telling the truth. The judge merely indicated the immateriality of the amount in theft from the person. No miscarriage of justice resulted which could be the only cause for a reversal. (Const., art. VI, § 4½; *People v. Watts,* 198 Cal. 776, 792 [247 P. 884].) The inquiry was not pertinent to the charge, but related solely to the veracity of the victim. Nothing said by the court could be reasonably construed as a certification of Barton's veracity. That subject had been explored to such extent as to acquaint the jury fully with Mr. Barton, and to enable them fairly to appraise his testimony.

The authority cited by appellant (*People v. Byrd,* 88 Cal. App.2d 188 [198 P.2d 561]) in support of her contention is not pertinent. It is readily distinguishable. The question there propounded to the defendant clearly indicated the judge's hostility to the accused and the "case was extremely close," requiring a display of the utmost fairness and impartiality.

The evidence against appellant was clear and positive and was believed by the jury. She was identified by her victim and the number of her automobile license was completely established. Under such circumstances, a reversal would restore the antiquated practice prior to the adoption of section 4½ of article VI of the Constitution which forbids a reversal of a judgment, unless after an examination of the record including the evidence, the court shall be of the opinion that the asserted error resulted in a miscarriage of justice.

Judgment affirmed.

McComb, J., and Fox, J., concurred.